FILED

JAN - 3 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>OCCMEDS BILLING SERVICES, INC.,<br><br>      Debtor. | Case No. 07-28444-A-11<br><br>Docket Control No. OHS-1, WFH-7, AND WFH-8<br><br>Date: January 3, 2008<br>Time: 9:00 a.m. |

### NOTICE OF INTENDED DECISION

Before the court are three motions, two by the debtor in possession and one by secured creditor Bridge Healthcare Finance, LLC. Bridge asks that the automatic stay be terminated so that it may pursue all of its collateral. The debtor, in addition to opposing Bridge's motion, seeks to have Bridge held in civil contempt for its alleged prior violation of the automatic stay, and to use cash collateral.

As to the civil contempt motion, the court announced its decision and made its preliminary findings and conclusions orally and on the record. It directed the debtor to lodge proposed written findings and conclusions and to file its motion for attorney's fees for services related to the prosecution of the civil contempt motion. The debtor must file and lodge these documents no later than February 4, 2008.

Also, given the disposition announced below of Bridge's motion for relief from the automatic stay, and given the court's prior order not permitting the debtor to use Bridge's cash collateral, the court will not compel Bridge to repay the $85,407 swept post-petition from the debtor's bank account to the debtor. Instead, this sum shall be applied to Bridge's claim against the debtor and not accounted for as a post-petition use of Bridge's cash collateral.

The motion for relief from the automatic stay shall be granted in part.

By this motion, Bridge seeks relief from the automatic stay to proceed against its collateral, consisting primarily of the debtor's accounts receivable, rights to payment, and intellectual property. This relief is sought pursuant to 11 U.S.C. § 362(d)(1) on the grounds that an effective reorganization is not in prospect because the debtor did not receive permission to use Bridge's cash collateral, that there is no other source of funding for the debtor's operations (other than a short-term loan from an insider), and that Bridge's collateral position has worsened since the filing of the petition in large part to the failure of the debtor's new business model.

On the other hand, the debtor argues that (1) despite its inability to use Bridge's cash collateral, the debtor is still in business; (2) Bridge's cash collateral has been improved and not been depleted; and (3) the debtor should be given the opportunity "to realize on the benefits of [its] efforts" to collect on the account receivables, under the current arrangement of the debtor collecting at Bridge's sole expense.

Bridge has filed a reply, contending that: (1) the debtor has not established an ability to reorganize; (2) the debtor will be unable to adequately protect Bridge's interest in its collateral; (3) the debtor has failed to make significant progress collecting its pre-petition rights to payment; and (4) relief from the automatic stay must include the software because it is essential in the collection of the receivables.

The court agrees with Bridge. The debtor has not established that it has the ability to reorganize its affairs.

First, as the court pointed out in its December 1 Memorandum Decision, the debtor's new business model "has fallen significantly short of producing the receivables it predicted at the beginning of this case." See December 1, 2007 Memorandum, at 7. Through the week of November 19, the debtor projected the generation of $124,274 in post-petition accounts receivable, but actually generated only $44,371, a negative variance of $79,903. None of these receivables came from new clients. See December 1, 2007 Memorandum, at 7.

The post-petition income figures presented in Exhibit P do not convince the court that anything significant has changed since it authored the December 1 Memorandum.

Second, the court has denied the debtor's use of Bridge's cash collateral. And, the debtor has secured no alternative, long-term financing for its operations.

Third, Bridge's calculations show that, from the petition date through the end of the week of December 10, 2007, Bridge's protection in pre-petition receivables had diminished by $23,468. And, while the inclusion of post-petition receivables increases

the debtor's protection in pre and post-petition receivables by $35,724, since the petition date, this figure does not take into account DSI's claim that the debtor is holding $37,807.83 in DSI funds. When taken into account, the debtor's protection in pre and post-petition receivables is a net of negative $2,084. See Exhibit A to December 27, 2007 Supplemental Memorandum of Bridge (Scott H. Mitchell, Jr. Declaration), at ¶¶ 7-9.

Fourth, the debtor's proposed chapter 11 plan is unlikely to be confirmed because (i) it proposes the surrender only some of Bridge's collateral, namely the receivables, without surrendering the software and the debtor's other business assets; and (ii) the plan is not feasible as the debtor has no apparent ability to fund the plan, as discussed above. See Arnold & Baker Farms v. United States (In re Arnold & Baker Farms), 85 F.3d 1415, 1423 (9th Cir. 1996) (prohibiting the surrender of only some collateral to an under-secured creditor in the satisfaction of the "indubitable equivalent" requirement of 11 U.S.C. § 1129(b)(2)(A)(iii)).

Lastly, the debtor has made no effort since filing the petition to recover the over-advances and claims against patients. See December 1, 2007 Memorandum, at 3-4. In general, and as explained in its December 1 Memorandum, all of the debtor's pre-petition rights to payment have serious and significant collectibility issues. Inaction will only exacerbate these issues.

The court concludes that there is cause to grant relief from the automatic stay. The debtor has not demonstrated an ability to reorganize or to adequately protect Bridge's interest in its

collateral.

Accordingly, Bridge's motion will be granted pursuant to 11 U.S.C. § 362(d)(1) to permit it to repossess its collateral (but as to deposits and banks accounts, see below), dispose of it pursuant to applicable law, and to use the proceeds from its disposition to satisfy its claim. No other relief is awarded at this time.

Bridge shall lodge proposed findings of fact and conclusions of law, as well as a proposed order on the motion, consistent with this ruling no later than February 4, 2008.

Finally, the debtor's motion to use cash collateral is not really a motion to use cash collateral. Rather, it is a motion pursuant to 11 U.S.C. § 361 asking the court to establish adequate protection for Bridge's replacement lien on the debtor's post-petition accounts receivable. According to the motion, the maximum cash necessary to satisfy Bridge's replacement lien on post-petition accounts is $153,755. It proposes to place this sum, derived from the collection of post-petition receivables and, if necessary, money advanced by an insider, into a segregated account for the benefit of Bridge.

It will go into a segregated account rather than to Bridge for two reasons. First, as to $37,808 of the $153,755, it is unclear whether Bridge or DSI is entitled to the money. Second, the debtor wants a fund from which it can collect amounts it is demanding from Bridge. It intends to file a surcharge motion pursuant to 11 U.S.C. § 506(c) for its improvement and protection of Bridge's collateral, as well as a motion for attorneys' fees for work related to the civil contempt motion.


The motion goes on to request that, once the account is funded, that the debtor be permitted to use the revenue derived from post-petition accounts because it no longer will be Bridge's cash collateral. However, if these accounts are no longer cash collateral, the debtor does not need the permission of the court to use them in ordinary course of its business. See 11 U.S.C. § 363(c)(1).

Therefore, assuming the debtor still wishes to proceed with this last motion given the disposition of the motion for relief from the automatic stay, it will be granted with four caveats.

First, the motion did not include a request to approve a loan from the insider to fund the bank account. Therefore, if a loan is necessary, absent a further motion, the loan shall be on an unsecured, nonpriority basis.

Second, the bank account must be funded no later than January 10, 2008. If not funded, Bridge's relief from the automatic stay shall extend to all of the debtor's bank accounts and deposits in which it has a security interest. Once funded, Bridge's relief from the automatic stay shall extend to any of the debtor's bank accounts and deposits in which Bridge has a security interest other than the bank account established pursuant to the cash collateral motion.

Third, the debtor shall have until February 4, 2008 to file and serve the motion under 506(c) and the motion for fees. If not filed, the amount in the account will be disbursed to Bridge. If filed, the amount remaining in the account after the disposition of the motions will be disbursed to Bridge.

Fourth, as suggested above, the court will not order that

the debtor is free to use cash collateral derived from post-petition receivables simply because it has otherwise provided for Bridge's replacement lien on those receivables.  That makes little sense.  Instead, the motion will be treated as being brought under section 361.  If a segregated account is funded with $153,755 for the benefit of Bridge, the account will supplant Bridge's post-petition replacement lien on accounts receivable.

Dated: 3 Jan. 2008

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court

Case 07-28444    Filed 01/03/08    Doc 203

| | |
|---|---|
| 1 | **CERTIFICATE OF MAILING** |
| 2 | I, Susan C. Cox, in the performance of my duties as a |
| 3 | judicial assistant to the Honorable Michael S. McManus, mailed by |
| 4 | ordinary mail to each of the parties named below a true copy of |
| 5 | the attached document. |

Daniel Egan
400 Capitol Mall 22nd Fl
Sacramento, CA 95814

Marc Levinson
400 Capitol Mall #3000
Sacramento, CA 95814-4407

Michael Heyman
10100 Santa Monica Blvd 7th Fl
Los Angeles, CA 90067

OccMeds Billing Services, Inc.
PO Box 227
Sacramento, CA 95812

Office of the U.S. Trustee
Robert T Matsui US Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: January 4, 2008

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus