Case 07-28444 Filed 01/11/08 Doc 213

2007-28444
FILED
January 11, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001035033

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re

OCCMEDS BILLING SERVICES, INC.,

    Debtor.

Case No. 07-28444-A-11

Docket Control No. OHS-1

Date: January 3, 2008
Time: 9:00 a.m.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On January 3, 2008, the court conducted an evidentiary hearing on the motion of secured creditor Bridge Healthcare Finance, LLC ("Bridge") for relief from the automatic stay. The debtor, OccMeds Billing Services, Inc., opposed the Motion and was represented at the hearing by Daniel Egan of Wilke, Fleury, Hoffelt, Gould & Birney, LLP. Bridge was represented by Marc Levinson of Orrick, Herrington & Sutcliffe LLP. The court, having considered the pleadings filed in support of and in opposition to the motion, having heard the testimony of witnesses, having considered the exhibits, and having issued its Notice of Intended Decision filed on January 3, 2008, now makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

1. The debtor has not demonstrated that there is an effective reorganization of its business affairs in prospect.

2.  As noted by the court in its December 1, 2007 Memorandum, the debtor's new business model "has fallen significantly short of producing the receivables it predicted at the beginning of this case." Through the week of November 19, 2007, the debtor projected the generation of $124,274 in post-petition accounts receivable, but actually generated only $44,371, a negative variance of $79,903. None of these receivables came from new clients.

3.  Since the court issued its December 1 Memorandum, the debtor's performance under its new business model has not improved. Exhibit P, offered by the debtor, shows no significant improvement.

4.  The debtor has secured no alternative, long-term financing for its operations since the court's refusal to allow it to use Bridge's cash collateral.

5.  Bridge's interest in its collateral is not adequately protected.

6.  Bridge's interest in pre-petition receivables has diminished by $23,468. And, while the inclusion of post-petition receivables increases the debtor's protection in pre and post-petition receivables by $35,724, since the petition date, this figure does not take into account Dispensing Solutions, Inc.'s ("DSI") claim that the debtor is holding $37,807.83 of DSI's funds. Thus, the "adequate protection" provided by pre and post-petition receivables is a negative $2,084.

7.  The debtor's proposed chapter 11 plan is unlikely to be confirmed, not only because of its doubtful feasibility, but also because it proposes the surrender of only some of Bridge's

1  collateral, namely the receivables, without surrendering to
2  Bridge its other collateral.  That other collateral includes
3  billing software.  Without the billing software, it would be
4  difficult for Bridge to collect the receivables.  And, while the
5  debtor has offered to license the use of that software to Bridge,
6  that offer came on the eve of the hearing.  Bridge did not have a
7  reasonable period of time to consider and analyze this offer.

8.  The debtor has made no effort since filing the petition to recover the over-advances to clients and claims against patients.  In general, and as explained in the court's December 1 Memorandum, all of the debtor's pre-petition rights to payment have serious and significant collectibility problems.  Inaction will only exacerbate these issues.

                          Conclusions of Law

1.  Cause exists to terminate the automatic stay as to Bridge pursuant to 11 U.S.C. § 362(d)(1).

2.  Bridge's interest in its collateral is not adequately protected.

3.  The debtor's proposed chapter 11 plan is unlikely to be confirmed because (i) it proposes the surrender of only some of Bridge's collateral, namely the receivables, without surrendering the software and the debtor's other business assets; and (ii) the plan is not feasible as required by 11 U.S.C. § 1129(a)(11) because the debtor does not have the ability to fund it.  <u>See also</u> <u>Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)</u>, 85 F. 3d 1415, 1423 (9th Cir. 1996) (prohibiting the surrender of only some collateral to an under-secured creditor in the satisfaction of the "indubitable equivalent" requirement of

11 U.S.C. § 1129(b)(2)(A)(iii)).

4. The automatic stay as to Bridge shall be terminated to permit Bridge to repossess its collateral, dispose of it pursuant to applicable law, and to use the proceeds for such disposition to satisfy its claim against the debtor.

5. Paragraph 4 hereof notwithstanding, as to the debtor's bank accounts:

    a. If the separate bank account of the debtor ("Segregated Account") described in the Order on Second Motion for Use of Cash Collateral filed in connection with WFH-8 ("Cash Collateral Order" on the "Cash Collateral Motion") is established and funded by the debtor as expressly provided in the Cash Collateral Order on or before January 10, 2008, relief from the automatic stay in favor of Bridge shall extend to all of the debtor's bank accounts and deposits in which Bridge has a security interest other than the Segregated Account.

    b. If the Segregated Account has not been fully funded on or before January 10th, Bridge's relief from the automatic stay shall extend to the Segregated Account in addition to all of the debtor's bank accounts and deposits in which Bridge has a security interest.

    c. The debtor shall have until February 4, 2008, to file and serve a motion under 11 U.S.C. § 506(c) and a motion for fees (as described in the order filed in connection with WHF-7). If such motions are not filed on or before February 4, 2008, the automatic stay as to the Segregated Account shall terminate as to Bridge, and the debtor shall

immediately cause the funds therein to be disbursed to Bridge. If such motions are timely filed, the amounts remaining in the Segregated Account will be promptly disbursed to Bridge after the court finally disposes of such motions.

6. To the extent that a Finding of Fact contains or constitutes a Conclusion of Law, it shall be deemed to be a Conclusion of Law, and to the extent that a Conclusion of Law contains or constitutes a Finding of Fact, it shall be deemed a Finding of Fact.

7. A separate order shall be entered.

Dated: 11 January, 2008

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court