2007-28444
FILED
January 11, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001033222

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 07-28444-A-11 |
| | ) | |
| OCCMEDS BILLING SERVICES, INC., | ) | Docket Control No. WHF-7 |
| | ) | Date: January 3, 2008 |
| | ) | Time: 9:00 a.m. |
| Debtor. | ) | |
| | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On January 3, 2008, the court conducted an evidentiary hearing on the motion of OccMeds Billing Services, Inc., the debtor and debtor in possession, for an order holding Bridge Finance Healthcare, LLC ("Bridge") in civil contempt of court. Daniel L. Egan of Wilke, Fleury, Hoffelt, Gould & Birney, LLP, appeared for the debtor, and Marc Levinson of Orrick Herrington & Sutcliffe, LLP, appeared for Bridge.  The court, having considered the pleadings filed in support of and in opposition to the motion, having heard the testimony of witnesses, having considered the exhibits, and having issued its Notice of Intended Decision filed on January 3, 2008, now makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

1.   Before this case was filed, Bridge entered into a loan and credit facility with OccMeds and extended a line of credit to

OccMeds.  Under the facility, Bridge would advance monies to OccMeds on its request.  These advances were secured by, among other things, OccMeds' receivables.  When an account debtor of OccMeds paid a receivable, it was deposited into a lockbox account at Bank of America.  Bridge periodically swept the monies deposited in the lockbox account into its account at LaSalle Bank, and then applied the swept monies to OccMeds' outstanding loan balance.  The structure of the OccMeds-Bridge financial relationship prior to the filing of the bankruptcy petition is graphically depicted in Exhibit K.

2.    In addition to collecting its own receivables, OccMeds also collected monies as the agent of Dispensing Solutions, Inc. ("DSI").  The monies collected for DSI were initially swept by Bridge and applied to OccMeds' loan balance.  OccMeds then repaid DSI from an advance charged against OccMeds' line of credit.

3.    Approximately 10 weeks prior to filing its bankruptcy petition, Bridge, DSI, and OccMeds entered into an written agreement.  Under the Bridge/DSI/OccMeds agreement, Bridge acknowledged that it had no interest in the funds collected by OccMeds for DSI.  Bridge further agreed to pay DSI these funds upon receipt of proper documentation from OccMeds.  The structure of the modified OccMeds/Bridge relationship is graphically depicted in Exhibit L.

4.    Between September 24 and October 6, 2007, OccMeds collected $85,407.40 on behalf of DSI.  This money was swept from the lockbox account by Bridge and applied to OccMeds' loan.

5.    OccMeds filed its bankruptcy petition at approximately 5:00 p.m. on October 10, 2007.  Bridge was notified of the

petition at 5:55 p.m. on October 10, 2007, and OccMeds demanded that it discontinue sweeping the lockbox account. From and after this time, Bridge was aware of the filing of OccMeds' petition. Despite OccMeds' demand, Bridge swept monies from the lockbox account on October 11, 12, 15, 16 and 17, 2007.

6.   On October 11, 2007, OccMeds informed Bridge that it owed DSI the sum of $40,856.38 for the period September 24, 2007 to September 28, 2007. Bridge did not immediately pay DSI.

7.   On October 15, 2007, a hearing was held on the OccMeds' motion to use Bridge's cash collateral. At the hearing OccMeds was authorized to use cash collateral, and Bridge was granted a replacement lien on post-petition revenues to secure the amount of pre-petition cash collateral used by OccMeds.

8.   At the conclusion of the hearing, OccMeds and Bridge informed the court that Bridge was holding monies that had been collected on behalf of DSI before the filing of the petition. Counsel also informed the court that neither Bridge nor OccMeds asserted an interest in these monies. The court indicated orally at the hearing that Bridge could pay these monies over to DSI. Neither Bridge nor OccMeds requested that this repayment be made from OccMeds' post-petition revenues. The court did not authorize the repayment of these monies from the debtor's post-petition revenue.

9.   On October 16, 2007, Bridge sent an e-mail to OccMeds acknowledging that the sum of $85,407.40 was owed to DSI ($40,856.38 for the period September 24, 2007 to September 28, 2007, and $44,550.62 for the period September 29, 2007 through October 8, 2007). Bridge responded that it would pay DSI, but

out of monies that it had swept from the lockbox account after the filing of the petition. OccMeds responded in turn by demanding that Bridge pay DSI from the funds it had received before the filing of the petition which included $85,407.40 belonging to DSI.

10. On October 10, 2007 and October 16, 2007, OccMeds' counsel demanded that Bridge discontinue sweeping monies from the lockbox account.

11. Despite OccMeds' demands, Bridge continued to sweep the lockbox every business day.

12. On or about October 17, 2007, Bridge returned the sum of $9,731.00 to OccMeds. This amount was $85,407.40 less than the amount swept from the lockbox account after the filing of the petition through October 17.

13. Thereafter, Bridge continued to sweep the lockbox account, but it returned the amount swept to OccMeds after a delay of one or two days.

14. OccMeds requested that Bank of America not allow Bridge to sweep funds from the lockbox account and instead transfer the funds to a debtor in possession account. Bank of America initially declined to do so because Bridge had control of the account. Bridge did not instruct Bank of America to turn over the funds in the lockbox account to OccMeds.

15. On October 24, 2007, OccMeds filed a motion asking the court to hold Bridge in civil contempt for sweeping the lockbox account after the filing of the bankruptcy petition and for its failure to return all of the monies it had swept from it.

16. Despite the demands from OccMeds and the filing of the

motion, Bridge continued to sweep funds from the lockbox account on a daily basis.

17.    On December 1, 2007, the court denied OccMeds permission to use Bridge's cash collateral.

18.    On December 10, 2007, the court, after an initial hearing, scheduled an evidentiary hearing on this motion for January 3, 2008.

19.    On or about December 14, 2007, Bank of America agreed to discontinue Bridge's ability to sweep the lockbox account and agreed to transfer the funds to OccMeds' debtor in possession account.  Bank of America did so based on the OccMeds' request without Bridge's consent.

Conclusions of Law

1.    Upon the filing of the bankruptcy petition on October 10, 2007, the funds in the lockbox account, other than the monies collected on behalf of DSI, were property of the bankruptcy estate.  As deposits were made into the lockbox account after the filing of the petition, those funds were also property of the bankruptcy estate or property of DSI in the possession of the bankruptcy estate.

2.    The automatic stay of 11 U.S.C. § 362(a) prohibits the exercise of control over property of the bankruptcy estate or property in the possession of the bankruptcy estate.  Bridge violated the automatic stay every time it swept monies from the lockbox account.  Bridge further violated the automatic stay by failing to instruct Bank of America to allow OccMeds access to the funds in the lockbox account.

3.    A person violates the automatic stay by failing to turnover property of the estate to the debtor in possession. After the filing of the petition, Bridge took possession and control of $85,407.40 of property of the estate and failed to turn it over to OccMeds despite OccMeds' demands and the filing of this motion.  Bridge's failure to return the monies to OccMeds was a further violation of the automatic stay.

4.    Bridge's violations of the automatic stay were willful. At all times, Bridge took the actions described above knowing of the pendency of OccMeds' chapter 11 case.

5.    The court concludes that $85,407.40 of OccMeds' property was taken by Bridge after the filing of the petition and not returned to OccMeds.

6.    A debtor that is an entity rather than an individual may not seek damages for a violation of the automatic stay pursuant to 11 U.S.C. § 362(k).  However, a debtor that is an entity is entitled to recover the damages, including attorneys' fees and costs, occasioned by a creditor's misdeeds that amount to a contempt of court.  See Dyer v. Knupfer (In re Dyer), 322 F.3d 1178 (9th Cir. 2003).

7.    A willful violation of the automatic stay is a contempt of court.  Bridge acted in contempt of court.  Id.

8.    While Bridge was obligated to return $85,407.40 to DSI, this should have been done from the funds Bridge swept from the lockbox account prior to the filing of the bankruptcy petition because those swept funds included $85,407.40 that belonged to DSI.

9.    By keeping the $85,407.40 swept pre-petition from the

-6-

lockbox account rather than returning it to DSI, Bridge reduced its pre-petition claim against OccMeds by $85,407.40.

10.  By impermissibly using $85,407.40 swept post-petition from OccMeds' lockbox account to pay DSI, Bridge inflated its replacement lien against OccMeds' post-petition receivables and cash.

11.  Even though Bridge should not have swept the $85,407.40 from the lockbox account after the filing of the petition, for two reasons the court will not order Bridge to return that sum to OccMeds.

 a.  First, Bridge paid $85,407.40 to DSI and there is no dispute that OccMeds collected $85,407.40 belonging to DSI before filing the petition.  If Bridge now paid $85,407.40 to the debtor, it would be out that sum twice.

 b.  Second, the court has modified the automatic stay to permit Bridge to proceed against its collateral.  It makes no sense to compel the return of the $85,407.40 to OccMeds but then permit Bridge to take it again.

12.  But, because Bridge should have paid $85,407.40 to DSI from its pre-petition sweep of the lockbox account rather than from its post-petition sweep, an adjustment to Bridge's claim is necessary.  Bridge may increase its pre-petition claim by $85,407.40, but its post-petition replacement lien shall be reduced by $85,407.40.

13.  OccMeds is entitled to recover reasonable attorneys' fees and costs incurred in connection with filing and prosecuting this motion.

14.  To the extent that a Finding of Fact contains or

constitutes a Conclusion of Law, it shall be deemed to be a
Conclusion of Law, and to the extent that a Conclusion of Law
contains or constitutes a Finding of Fact, it shall be deemed a
Finding of Fact.

15.  A separate order shall be entered once the court has
determined the reasonable amount of the attorneys' fees and costs
incurred by OccMeds in connection with Bridge's violation of the
automatic stay and the prosecution of this motion.  OccMeds'
counsel shall file and serve a motion requesting such fees and
costs no later than February 4, 2008, unless the parties earlier
agree on the reasonable amount of such fees and costs.  In the
event of an agreement, a stipulation shall be filed no later than
February 4, 2008.

Dated: 11 January, 2008

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court